## STATEMENT OF FACTS

1. On October 20, 2025, at 23:44 hours, a call for assistance was received at 3236 Minnesota Avenue Southeast, Washington, D.C. 20019, in reference to a stabbing. A United States Park Police Officer arrived on scene first and located Y.C. ("Complainant 1") and L.F. ("Complainant 2") on the curb across from 3228 Minnesota Avenue Southeast, Washington, D.C. 20019. Complainant 1 was suffering from multiple stab wounds to her back and Complainant 2 had lacerations to her right wrist. The Complainants advised that they had been kidnapped, and they were dropped off at an unknown location. The Complainants stated that they then walked to their current location seeking assistance and were able to flag down a passerby who called 9-1-1.

2. Sixth District Units with the Metropolitan Police Department ("MPD") arrived on scene and continued to interview the Complainants, who stated that they were going to babysit for a friend of Complainant 1's at an apartment complex near Suitland Parkway & Stanton Road Southeast, Washington D.C. The Complainants advised that when they arrived at the location, they went inside the residence to get the baby and supplies and Suspect 1 and Suspect 2 "jumped" and stabbed them. The Complainants then advised they were duct taped and held in a bathroom before being put in Complainant 1's car and were then driven to an unknown location and left in the vehicle. Complainant 1 and Complainant 2 eventually exited the car and wandered around until they could get help. Complainant 1 and Complainant 2 were treated on scene by the District of Columbia Fire and Emergency Medical Services Department and transported to a local area hospital for treatment.

3. The MPD's Sixth District units canvassed the area for Complainant 1's vehicle, which was eventually located in a parked and unoccupied state in the 3200 block of M Street Southeast, Washington, D.C. 20019. A cursory search of the vehicle was conducted, and blood

stains and pieces of duct tape were observed on the back seat. Law enforcement also observed that its front passenger tire was flat.

4. The MPD's Seventh Detective's Office was notified and Detective Quinlan responded to the scene. Complainant 1's vehicle was parked on the south side in the 3200 block M Street Southeast, Washington D.C. 20019, near the intersections of Branch Avenue, Anacostia Road and M Street Southeast, Washington, D.C. Blood stains were observed on the rear driver's side seat and strips of duct tape were on the rear floorboard. The vehicle was photographed on scene and taken as evidence pending a search warrant.

5. A preliminary search of the MPD Crime Camera at Randle Circle showed Complainant 1 and Complainant 2 wandering around the circle at approximately 23:39 hours and then heading northbound on Minnesota Avenue Southeast, Washington, D.C. The footage further showed emergency personnel arriving on scene.

6. Both Complainant 1 and Complainant 2 were interviewed throughout the course of the investigation, by the MPD. It was learned that Complainant 1 had been the victim of a rape in January and the suspect, Kayvon Edwards (███████) (hereinafter "EDWARDS"), had been arrested and was due in court on October 21, 2025.[1] Suspect 1, who was later identified as Robynn Danielle Bynum (███████) (hereinafter "BYNUM"), befriended Complainant 1 approximately three months ago on Instagram. BYNUM stated she was pregnant and was looking for friends in the area. Complainant 1 and BYNUM became friends and even worked together for a company called Legal Shield. Approximately two months ago, Complainant 1 was talking with BYNUM who advised that Complainant 1 knew BYNUM's "baby-daddy." When Complainant 1 asked who the "baby-daddy" was, BYNUM advised her that it was "Kayvon" and that she needed

---

[1] Prince George's County, Maryland, Case No. ███████.

2

to drop her case against him. Complainant 1 cut all ties with BYNUM and blocked her on social media.

7.  Approximately one month later, Suspect 2, who was later identified as Cierra Charity Lee (███████) (hereinafter "LEE"), befriended Complainant 1 on Instagram. LEE advised that she was a hairdresser and offered to do Complainant 1's hair. They communicated online and, on October 19, 2025, LEE: (i) asked Complainant 1 if Complainant 1 could babysit for; and (ii) offered to pay Complainant 1 for her services. Complainant 1 agreed and arrived at the location she was directed to, which was 2402 Irving Place Southeast, Washington, D.C. However, when Complainant 1 arrived, she did not feel comfortable and left. LEE called again on October 20, 2025, and asked Complainant 1 to babysit and Complainant 1 agreed. Complainant 1 called Complainant 2 at approximately 20:00 hours to babysit with her, left her residence in Maryland, and picked Complaint 2 up from another location in Maryland before heading to LEE's residence at 2402 Irving Place Southeast, Washington, D.C.

8.  When Complainant 1 and Complainant 2 arrived at the location, LEE came out from the rear and brought them in through the side gate into the basement. Once inside, the Complainants were handed a car seat and diaper bag. BYNUM then came out of a room from behind them and began stabbing Complainant 1 in the back. Complainant 1 fell to the ground and, while Complainant 2 attempted to intervene, Complainant 2 was cut on her wrist and elbow. LEE grabbed Complainant 2 and brought her into the bathroom and duct taped her hands together. BYNUM brought Complainant 1 into the bathroom as well and duct taped her hands together. BYNUM and LEE then went through the Complainants pockets and took their phones, car keys, and other property, and put them into a sports bag. Complainant 1 mentioned that she was then yelled at by BYNUM and LEE to drop her case against "Kayvon." Both Complainants did not

know how long they were in the bathroom but were eventually told they were going to be taken to Pennsylvania and dropped off somewhere so they couldn't get back to Maryland for court. During the yelling, it was learned that LEE was actually the mother of "Kayvon's" child.

9. Complainant 1 and Complainant 2 were escorted and placed in the rear seat of Complainant 1's vehicle and then were driven around for an extended period. During their time in the vehicle, the Complainants' eyes were duct taped, and they did not observe where they were traveling. They both heard BYNUM and LEE arguing about how the individual who was driving was doing a bad job, and that the driver was running red lights and swerving. Eventually, Complainant 1 and Complainant 2 felt a bump as if the vehicle struck something and the vehicle came to a stop. The Complainants heard BYNUM and LEE get out the vehicle, close the doors, and then lock the car. The Complainants stayed in the vehicle for approximately 30 minutes and did not know if BYNUM and LEE were outside the vehicle. The Complainants then assisted each other with removing the duct tape from their eyes and hands and fled from the vehicle. The Complainants then flagged down a citizen and placed a call to 9-1-1, which prompted law enforcement to respond.

10. Complainant 1 and Complainant 2 were separately shown a Google map view of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and they both confirmed it was the residence where the assault took place.[2] The Complainants also stated there was a lot of blood in the bathroom from the assault. Complainant 1 suffered (4) four, approximately one-inch, stab wounds to her back and a laceration to her left index finger. Complainant 2 suffered multiple

---

[2] Complainant 1 confirmed that although she had been directed to 2402 Irving Place Southeast, Washington, D.C., as described in paragraph 7 above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was in fact the residence where the offenses occurred.

lacerations to her wrist and received stiches. Both Complainants were treated and released from the local area hospital.

11. Complainant 1 provided screenshots from BYNUM's and LEE's social media page. The Federal Bureau of Investigation ("FBI") researched LEE's social media username and conducted searches in law enforcement databases, which revealed that the account was indeed connected to a Cierra Charity Lee (), with an address of .

12. Complainant 1 advised that Complainant 1 and BYNUM worked together for a few months, and she was able to provide a screenshots of BYNUM's information. The FBI researched this information in a law enforcement database and located a Robynn Danielle Bynum with a date of birth of , telephone number , and an address of , .

13. MPD Detective Philemon Samuels created a 9-person color photo array with BYNUM in position #2 and created a separate 9-person color photo array with LEE in position #3 to be shown to Complainant 1. MPD Detective Couick assisted with a photo viewing procedure inside of the Seventh District Detectives Office Interview Room. The photo array containing BYNUM was displayed to Complainant 1, who nodded and pointed to #2. Complainant 1 was asked for a statement of confidence, and she stated "Very." Complainant 1 then circled the number under the picture and placed her initials on it. Complainant 1 was then displayed the photo array for LEE, and she appeared visibly upset with tears. She selected #3, circled the number under the picture and placed her initials on it. After looking at the photo she flipped the paper over. When asked for her statement of confidence she mentioned "For sure; that face don't leave my brain."

14. MPD Detective Philemon Samuels created another 9-person color photo array with BYNUM in position #3 and a separate photo array with LEE in position #2. MPD Detective Douglas assisted with a photo array viewing procedure inside of the Seventh District Detectives Office Interview Room. The photo array containing LEE in position #2 was shown first to Complainant 2. She pointed to #2 and mentioned, "This is the one who grabbed me." When asked for her statement of confidence she stated "100%." Complainant 2 then circled the number under #2's picture and placed her initials on it. Complainant 2 was then showed the photo array with BYNUM in position #3 and selected #3. When asked for her statement of confidence she stated "100%." When asked what she saw #3 do, Complainant 2 stated she "Stabbed us."

15. LEE has been identified by both Complainants and her listed address is ███████████████████████████████, i.e. where the location where the assault, robbery and kidnapping took place.

16. On October 29, 2025, your affiant reviewed calls from the Prince George's County Department of Corrections located at 13400 Dille Drive, Upper Marlboro, Maryland 20772.

17. On October 20, 2025, at 18:20 hours, EDWARDS placed a call to a telephone number associated with BYNUM using PIN # 060371[3]. During this call, EDWARDS spoke with a female and asked her several times if she knew: (i) how to drive; and (ii) what she was doing. EDWARDS also asked if she trusted herself to get to the destination and further noted, "If you get

---

[3] A review of the underlying call detail records shows that PIN # 060371 is associated with Prince George's County Department of Corrections inmate "Zion Peters." Nevertheless, after listening to this call, I believe that the caller is in fact EDWARDS. I arrived at this conclusion by: (i) comparing the caller's tone, accent, and overall voice to that of EDWARDS's other jail calls; and (ii) reviewing the substance of the call, which appears to pertain to the offense conduct.

caught while he[4] in that car y'all are done." This conversation occurred before the Complainants arrived at LEE's residence that day.

18.     On October 20, 2025, at 21:36 hours, EDWARDS placed another call to a telephone number associated with LEE using PIN # 059605.[5] During the call, a female is overheard saying "move over before you crash…slow down." Then the female instructed EDWARDS to call her back the following day.

19.     On October 20, 2025, at 21:44 hours, EDWARDS placed an additional call utilizing PIN # 059605 to a telephone number associated with LEE. On the call, EDWARDS stated, "All I'm hearing is don't crash, move over." A female then stated to EDWARDS, "She keep hitting the curb" and told EDWARDS about how the vehicle she was using had been damaged. The female caller then advised EDWARDS that the vehicle's tire was flat. EDWARDS then asked the female "where's he at?" and the female caller responded, "back of the car." This prompted EDWARDS to ask, "he alright?" This call, along with EDWARD's prior call placed at 21:36 hours, are consistent with: (i) the Complainants' account of what they heard while kidnapped in Complainant 1's vehicle; and (ii) law enforcement's observations of Complainant 1's vehicle when it was found, i.e., that it had a flat front tire.

20.     During the discussion referenced in paragraph 19, the female caller also mentioned to EDWARDS that "it's not just him … brought his best friend with him, we took that too." Based on my knowledge of the case, I believe that the female caller is referencing the Complainants who were kidnapped.

---

[4]     During several of the jail calls, EDWARDS and his co-conspirators routinely refer to the victims using male pronouns such as "he" and "him." Based on my training and experience, coupled with my knowledge of the investigation, I believe that EDWARDS and his co-conspirators use such pronouns to mask the victims' true identity.

[5]     A review of the underlying call detail records shows that PIN # 059605 is associated with Prince George's County Department of Corrections inmate "Keyvon Edwards."

21. On October 20, 2025, at 21:55 hours, EDWARDS placed another call utilizing PIN # 059605 to a telephone number associated with LEE. During the conversation, a female stated to EDWARDS "He dropped em, he said he wasn't going show up." Based on my knowledge of this matter, I believe that EDWARDS and the female caller were discussing whether Complainant 1 was going to appear in court for EDWARD's criminal case in Prince George's County, Maryland.

22. As such, your affiant respectfully submit that there is probable cause to believe that on October 20, 2025, EDWARDS, BYNUM, AND LEE committed violations of 18 U.S.C. § 1201(c) (Conspiracy to Commit Kidnapping), 18 U.S.C. § 1201(a) (Kidnapping), 22 D.C. Code § 402 (Assault with a Dangerous Weapon), 22 D.C. Code §§ 2001 and 4502 (Kidnapping While Armed), and 22 D.C. Code §§ 2801 and 4502 (Armed Robbery).

_____
Patrick Higgins (Badge # 27526)
Special Agent, Federal Bureau of Investigation

SWORN AND SUBSCRIBED BEFORE ME ON October 31, 2025.

_____
G. Michael Harvey,
United States Magistrate Judge